HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARBOR LANDS, L.P., et al.,

    Plaintiffs,

v.

CITY OF BLAINE, et al.,

    Defendants.

CASE NO. C06-1370RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 36). Neither party has requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS the motion as to all claims, except as to the two claims that the court REMANDS to the superior court.

ORDER – 1

## II. BACKGROUND

Plaintiff Harbor Lands, L.P., is a real estate development business. In July 2003, Harbor Lands purchased from Donald Richmond the property located at 1300 Peace Portal Drive (the "Property") in the City of Blaine (the "City"). Harbor Lands intended to develop condominiums known as the "Seascape" project on the Property.

Before Harbor Lands purchased the Property from Richmond, the City had been negotiating with Richmond to acquire additional right-of-way from the Property ("Additional ROW"). The City obtained an April 5, 2002 summary appraisal of the Additional ROW, which valued it at $35,600. Kennedy Decl. (Dkt. # 47), Ex. A at 9A.

In a letter dated June 9, 2003, the City offered to purchase the purchase the Additional ROW from Richmond for approximately $6,700. The terms of the offer included the extinguishment of certain delinquent assessments owed to the City. Attached to the letter was a legal description of the specific Additional ROW that the City wanted to acquire. *See id.*, Ex. A at 9A-10A. This purchase was never finalized. *See* Peterson Decl. (Dkt. # 37) ¶ 3.

After Harbor Lands purchased the Property from Richmond, Harbor Lands' principal, Plaintiff Joel Douglas,[1] met with the City regarding the Seascape project. In July 2003, The City offered to buy the same portion of the Property that it had tried to obtain from Richmond, but Harbor Lands did not accept.

After Harbor Lands rejected the City's offer regarding the Additional ROW, both the value of the Additional ROW and the amount of delinquent assessment debt increased, with the debt outstripping the property value. In July 2004, the City informed Harbor Lands that, due to the increased debt on the Property, if it wished to reconsider the Additional ROW offer it had previously rejected, it would now owe the City

---

[1] For ease of reference, this order refers to the Plaintiffs collectively as "Harbor Lands," except where it is necessary to emphasize Douglas's actions separately.

ORDER – 2

approximately $5,200. *See* Peterson Decl. ¶ 4. Douglas indicated that he would prefer that the property transfer not require the payment of any money to the City, even if that meant conveying more land to the City. *Id.* ¶¶ 6-7. As part of this discussion, the City invited Harbor Lands to obtain an updated appraisal of the Property, but Harbor Lands did not do so. *Id.* ¶ 6.

In March 2005, the City sent to Harbor Lands an updated proposal for a transfer of a wider piece of property than had been described in previous proposals, inviting Harbor Lands to propose revisions if desired. *See* Peterson Decl., Ex. 6. The updated proposal contained a legal description of the Additional ROW to be conveyed, but did not otherwise emphasize the change. The updated proposal required no payment for the transfer. Without obtaining an appraisal or proposing any changes, Douglas signed the deed attached to the City's proposal. The City forwarded the agreement to Harbor Lands' building designer, who then forwarded the legal description to Douglas, noting that the legal description would be needed to "restake the south end of Douglas' site." Second Roy Decl. (Dkt. # 50), Ex. 5. Douglas claims that he did not realize that the property description in the 2005 deed was different from previous proposals until months after he had signed the agreement. *See* Douglas Decl. (Dkt. # 48) ¶ 5.

In April 2005, the City issued Harbor Lands a building permit for the construction of the foundation of the Seascape project. On June 10, 2005, City Manager Gary Tomsic entered the property and ordered the contractors to stop work because their work exceeded the foundation-only permit. On June 13, 2005, Harbor Lands acquired a full building permit, which effectively mooted the June 10 stop-work order. Though the building permit had been issued to Harbor Lands, the City had never approved a site plan. Over the next few months, the City continued to request site-plan information from Harbor Lands, and Harbor Lands made many changes to its initial site-plan proposal. The City and Harbor Lands corresponded regarding numerous concerns, specifically that

ORDER – 3

Seascape's garage building significantly encroached on the City's right-of-way and that Harbor Lands had failed to submit a storm water drainage plan for the Property. In early October 2005, Harbor Lands submitted an amended site plan. The City found the plan to be incomplete and requested specific additional information, including information regarding the storm water system and how to solve the encroachment problem.

On October 26, 2005, the City issued a partial stop work order requiring that "all site work shall stop until site plan approval has been achieved." Galvin Decl. (Dkt. # 38), Ex. 12. The order also specified that certain structures installed in the City's right-of-way shall be removed, that no further work shall take place in the City's right-of-way without City approval, that no work on the storm water system shall be performed without City approval. *Id*. The order noted that work on the existing structures other than the maintenance building (the building that encroached on the City's right-of-way) could continue. *Id*. It was ordered to stop the unapproved site work, but work on the non-encroaching buildings could continue.

On November 4, 2005, Harbor Lands appealed the order to the City hearing examiner on the grounds that (1) the issuance of the building permit demonstrated that the City had either approved or waived review of the site plan, and (2) BMC 17.17 did not authorize a stop work order. Four days later, Harbor Lands began diverting Property storm water into a City sanitary sewer trench. Later that day, in order to prevent the untreated storm water from entering the sanitary sewer system, a City official instructed a Harbor Lands contractor to install a clay dam in the City sewer trench at the Property line. According to Harbor Lands, water that would have otherwise drained off the Property was prevented from doing so as a result of the dam, which created, *inter alia*, flooding and drainage problems on the Property. The Property eventually drained after Harbor Lands implemented a temporary storm water plan. *See* Galvin Decl. ¶ 17.

ORDER – 4

While the City continued to process Harbor Lands' site plan and compliance review, City Manager Tomsic requested a status update from Terry Galvin, the City's Community Development Director. On November 12, 2005, Galvin sent an e-mail to Tomsic, and copied certain City staff members and the entire City Council. *See* Galvin Decl. ¶¶ 23-25. This e-mail, titled "Joel Douglas issues," includes statements that: (1) Douglas would face monetary penalties and perhaps criminal charges if Harbor Lands violated the stop work order, (2) that Douglas was engaged in "ongoing noncompliant or illegal land use actions," and (3) that "each and every one of [Galvin's] staff has had to spend an inordinate amount of time responding to Mr. Douglas's compliance issues, his faxes and his abrasive and demanding phone calls." *Id*., Ex. 14.

Hearings on Harbor Lands' stop work order appeal were held during January, February, and March 2006. In March 2006, the City and Harbor Lands negotiated a lifting of the stop work order. The City hearing examiner denied Harbor Lands' appeal in April 2006. Harbor Lands then appealed the hearing examiner's decision to the City Council on May 1, 2006. On May 8, 2006, the City Council adopted an ordinance providing specific authority for the issuance of stop work orders for violations of BMC Title 17.

On July 24, 2006, the City Council affirmed the hearing examiner's decision. The next month, Harbor Lands filed a Land Use Petition Act ("LUPA") appeal in Whatcom County Superior Court. While pursuing its LUPA appeal, Harbor Lands brought a separate suit in superior court against the City and Galvin, raising claims of inverse condemnation, trespass, unlawful collection and discharge of surface water, tortious interference with a business expectancy, negligence, violation of RCW 64.40.020, violation of state and federal due process, defamation, and outrage. The City removed that case to this court.

ORDER – 5

This matter was stayed pending a decision on the LUPA appeal in superior court. Whatcom County Superior Court Judge Ira Uhrig reversed the hearing examiner's decision, ruling that the City did not have authority to issue the stop work order. The City appealed to the Washington State Court of Appeals, which vacated Judge Uhrig's ruling on the ground that the dispute was moot at the time of the ruling. *See Harbor Lands, L.P. v. City of Blaine*, 191 P.3d 1282 (2008).[2]

### III.  ANALYSIS

**A.  Standard of Review on Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

**B.  The Court Remands Harbor Lands' Takings Claims Because They Are Not Ripe.**

Harbor Lands raises two takings claims against the City under the Fifth Amendment: the first based on the City's taking 9½ feet of right-of-way from the Property without compensation, and the second based on water damage to the Property that was caused by the installation of a dam in the City's sewer trench.

---

[2] Because the Washington State Court of Appeals' opinion was entered in September 2008, statements submitted to the court before that time speculating as to the outcome of the appeal are now superfluous. *See, e.g.*, Defs.' Reply at 5; Roy Decl. (Dkt. # 50) ¶ 3 (both speculating that the Washington State Court of Appeals was likely to reverse). Therefore, Harbor Lands' motion to strike the speculative statements is DENIED as moot.

ORDER – 6

The Takings Clause of Fifth Amendment to the United States Constitution requires that a private property interest shall not "be taken for public use, without just compensation."  A federal takings claim "is not ripe until a litigant has '[sought] compensation through the procedures the State has provide for doing so." *Spoklie v. Montana*, 411 F.3d 1051, 1057 (9th Cir. 2005) (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985)).  Until a litigant has exhausted the state procedure for compensation and been denied compensation, no taking has occurred.  *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir. 1997), *abrogated on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007).  *See also Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 20 (1992) ("[A]s a matter of federal law, just compensation has not been denied, and so no federal right is involved, until the state has denied a plaintiff's cause of action in inverse condemnation.").

Harbor Lands argues that it was prevented from exhausting the state procedure because the Defendants removed the case to this court.  Harbor Lands asserts that the inverse condemnation claim is now ripe for ruling by this court, but Defendants argue that the claim should be dismissed because Harbor Lands did not exhaust the state procedure.  Neither position is correct.

Defendants' removal of this case denied Harbor Lands the opportunity to exhaust the state procedure for compensation.  Because Harbor Lands has not had the opportunity to exhaust the state procedure, its taking claims are not ripe for review in this court.  It would be improper for the court to take any action on the unripe claims — whether to review its merits or to dismiss it — because the court lacks subject matter jurisdiction over unripe claims.  *See Doak Homes, Inc. v. City of Tukwila*, 2008 WL 191205 (W.D. Wash. Jan. 18, 2008) (finding that the district court did not have subject matter jurisdiction over a removed takings claim).  Therefore, under 28 U.S.C. § 1447(c),

ORDER – 7

Harbor Lands' takings claims must be remanded to Whatcom County Superior Court for further proceedings.

**C.   The Court Grants Summary Judgment to the City on Harbor Lands' Due Process Claim.[3]**

The Fourteenth Amendment to the United States Constitution protects against deprivations of life, liberty, or property by the State without due process of law.[4] *See Baker v. McCollan*, 443 U.S. 137, 145 (1979). Harbor Lands invoked 42 U.S.C. § 1983 to raise a federal due process claim, asserting that the City's conduct amounts to a deprivation of a property without due process of law. A federal due process claim has four elements: (1) a person acting under color of state law, (2) a federal constitutional or statutory property interest, (3) a deprivation of that interest, and (4) a failure of due process in effecting the deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Many substantive due process claims based on land use regulations are preempted by the Fifth Amendment. *See, e.g., Armendariz v. Penman*, 75 F.3d 1311, 1321-24 (9th Cir. 1996). This preemption occurs because the Fifth Amendment's Taking Clause contains explicit protection regarding the taking of private property, so it is a more precise vehicle to protect certain property interests as compared to the "generalized

---

[3] In the same section of its Complaint raising the due process claim, Harbor Lands also lists an equal protection claim. *See* Complaint ¶ 4.19. The City contends that this claim should be dismissed because Harbor Lands has not alleged that it received different treatment than any similarly situated individuals. *See* Defs.' Mot. at 15 n.3. Harbor Lands does not address this argument in its Opposition or otherwise address its equal protection claim (or any facts that would support such a claim). Thus, the court concludes that this claim should be dismissed.

[4] The Washington Constitution has a virtually identical due process clause. *See* WASH. CONST. Art. 1, Sec. 3. Though Harbor Lands raises both a state due process claim and a federal due process claim, it has provided no analysis showing that an independent state constitutional analysis would differ from an analysis under the United States Constitution. *See State v. Gunwall*, 106 Wn.2d 54, 61-62 (1986) (identifying six nonexclusive criteria that a plaintiff should analyze if seeking independent interpretation of Washington's constitution). Without a showing that the state claim should be analyzed independently, the federal analysis in this section applies equally to Harbor Lands' state claim.

ORDER – 8

notion of 'substantive due process . . . .'" *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1024-25 (9th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (applying *Graham*'s preemption rule in the context of a substantive due process claim based on a land use regulation). But the Fifth Amendment does not preempt all due-process challenges to a land use regulation: a land use action that causes an arbitrary and irrational deprivation of real property, but does not cause a taking, might be "so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005).

In this case, Harbor Lands contends that the City's stop work order was arbitrary and irrational because the BMC did not specifically authorize the action at the time it was ordered. Of "critical significance" to Harbor Lands' argument is that the City Council amended the BMC to explicitly authorize stop work orders of the kind issued in this case *after* Harbor Lands appealed the stop work order. *See* Pltfs.' Opp'n at 18.

It is uncontested that at the time the stop work order was issued, the BMC did not explicitly authorize stop work orders based on violations of BMC Title 17. The authority for the stop work order has been the subject of Harbor Lands appeal before the hearing examiner, the City Council, Whatcom County Superior Court, and the Washington State Court of Appeals. While those bodies have come to different conclusions on that issue, the question before this court is related, but slightly different: Was the City's conduct so arbitrary and irrational as to run afoul of the Due Process Clause?

The court concludes that the answer is no. The timeline of this case demonstrate that the City had communicated to Harbor Lands over a period of months that it needed certain site plan requirements in order to ensure that the ongoing work complied with the City code. *See* Galvin Decl., Exs. 4-10. The City and Harbor Lands also discussed the encroachment and storm water problems in the weeks before the stop work order was issued. *See id.* The City notified Harbor Lands multiple times that it had failed to

ORDER – 9

comply with multiple site-plan provisions of the BMC and that some of its construction encroached upon the City property. *See id.* Even if the court were to assume that BMC did not clearly authorize a stop work order under these circumstances, that would not necessarily lead the court to conclude that the City's conduct was arbitrary or irrational. The BMC does authorize City officials to administer, interpret, and apply Title 17's provisions, and the City's conduct was at least minimally related to the BMC provisions requiring certain submissions to ensure BMC compliance. Harbor Lands does not dispute that the BMC's provisions serve a legitimate governmental objection, and it is essentially undisputed that the City's conduct was in response to Harbor Lands' violation of those provisions.[5] Because the City's conduct was rationally related to the BMC's provisions, the City's conduct in enforcing the provisions via the stop work order was not so arbitrary or irrational as to run afoul of the due process clause. Because Harbor Lands has not shown that a constitutional deprivation occurred, its substantive due process claim fails as a matter of law.

It is unclear the extent to which Harbor Lands also raises a procedural due process claim. Harbor Lands has not identified any procedural defect in the post-deprivation remedies available. In the one short paragraph in its Opposition in which Harbor Lands refers to procedural due process, it cites a Washington state case regarding the issue of damages in a Section 1983 case. *See* Pltfs.' Opp'n at 20 (citing *Mission Springs, Inc. v.*

---

[5] Even under Harbor Lands' argument that the BMC's site-plan requirements were waived when the building permit was issued, it is undisputed that Harbor Lands made numerous changes to the site plan that had not been approved and was acting upon those unapproved changes when the stop work order was issued. Harbor Lands submitted an amended site plan in early October, but the plan had requested the submission of additional information. Specifically, the City required that Harbor Lands address the encroachment problem and submit a storm water plan. *See* Galvin Decl., Ex. 10. The fact that Harbor Lands continued to perform encroaching site work and work on the storm water system (which Harbor Lands does not dispute) gave rise to the stop work order. Thus, even if some requirements had been waived earlier in the year, as of October 12, 2005, when the City requested additional information regarding the amended site plan, Harbor Lands was on notice that the encroaching site work and storm water system work had not been authorized or waived by the City. Harbor Lands does not deny the encroachment or the storm water system work, but only disputes whether those actions could give rise to a stop work order.

ORDER – 10

*City of Spokane*, 134 Wn.2d 947, 971 (1998) ("'[T]he amount of damages plaintiffs may be entitled to is a separate issue from whether defendants' conduct was arbitrary or unreasonable and therefore violate of due process.'")). As discussed above, the court concludes that the City's conduct was not arbitrary or unreasonable, and therefore did not violate due process. Harbor Lands has provided the court with no basis to conclude that the procedure used in this case violates procedural due process, so to the extent that it is has raised a procedural due process claim, it is dismissed.

**D. The Court Grants Summary Judgment to the City on Harbor Lands' Claim for Reformation or Rescission of the Deed.**

Harbor Lands requests declaratory relief on two issues: it requests rescission or reformation of the deed between the parties due to Douglas' unilateral mistake as to the property description, and requests a determination that the City's actions with regard to the trench dam caused the flooding damage to the Property. *See* Complaint ¶ 4.9-.11. The court will address the second request in the next section of this order, *see supra* III.D, which discusses the flooding issues.

As to the first request, Harbor Lands has not met its burden to show the inequitable conduct needed to support reformation or rescission of the deed. A trial court has equitable power to reform or rescind a contract if there is clear, cogent and convincing evidence of a mutual mistake, or a unilateral mistake coupled with inequitable conduct. *See Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843 (2000).

Harbor Lands identifies two examples of the City's inequitable conduct: (1) not specifically informing Douglas before he signed the deed that the property description differed from previous drafts, and (2) not informing Harbor Lands that its buildings encroached on City property until after building permits had been granted and construction was underway. According to Harbor Lands, the City's conduct is either

ORDER – 11

inequitable as a matter of law, or these allegations at least raise a question of fact as to whether the City's conduct was inequitable.

The court disagrees. Harbor Lands has not identified facts which, if true, would establish that the City's conduct was inequitable. Although Douglas may have been mistaken as to the boundaries of the property affected by the deed, this mistake was not the result of the City's inequitable conduct. The deed plainly stated the property description, *see* Peterson Decl., Ex. 6, and there is no evidence or even an allegation that the City ever represented to Douglas that any other piece of property was being transferred. There is no evidence that the City knew or should have known that Douglas was mistaken as to the property description. The City's discussions with Douglas contrasting the debt with the property value, in combination with the 2005 transfer not requiring Douglas to pay any money to the City, should have alerted Douglas that something had changed from the previous proposal. Thus, the court disagrees with Harbor Lands that the City's conduct was inequitable because it did not draw Douglas's attention to the change in the property description.

Harbor Lands' second example of the City's inequitable conduct is that it did not take any action regarding encroachment until after Harbor Lands' construction was substantially underway, even though it was on notice that Harbor Lands' construction plans were developed with the earlier property description in mind. Harbor Lands has not, however, submitted any evidence to support this claim. The City has submitted numerous documents showing that the City protested Harbor Lands' encroachment over a period of months, and the City discussed multiple solutions to the encroachment problem with Harbor Lands before the stop work order was issued. *See*, *e.g.*, Peterson Decl., Exs. 7-10; Galvin Decl., Exs. 7-11. Harbor Lands has submitted no evidence showing that the City waited until the Seascape project was substantially underway before it protested that Harbor Lands encroached upon City property.

ORDER – 12

Because Harbor Lands has presented no evidence that the City acted inequitably, Harbor Lands' claim for reformation or rescission of the deed fails as a matter of law.

**E.     The Court Grants Summary Judgment to the City on Harbor Lands' Claims Based on Water Damage.**

The damage caused by the flooding and rising water on the Property gives rise to three claims in Harbor Lands' complaint: trespass, unlawful collection and discharge of surface water, and declaratory judgment stating that the City's requiring Harbor Lands to dam a City trench was unlawful. *See* Complaint ¶¶ 4.6, 4.8, 4.11. The City has raised the common enemy doctrine as an affirmative defense. *See* Answer (Dkt. # 25) at 12. The common enemy doctrine provides that surface water is a common enemy against which any party may defend itself, even if that defense causes injury to others. *See Pruitt v. Douglas County*, 116 Wn. App. 547, 554-55 (2003).

Harbor Lands contends that two of the exceptions to the common enemy doctrine apply here. Under the "watercourse or natural drainway" exception, a municipality is liable for resulting damage if it dams a stream, gully, or natural drainway. *See Rothweiler v. Clark*, 108 Wn. App. 91, 98 (2001). A natural drainway is a "course, formed by nature, which waters naturally and normally follow in draining from higher to lower lands." *King County v. Boeing Co.*, 62 Wn.2d 545, 550 (1963). Both parties acknowledge that the drain system at issue in this case was not a naturally occurring drain, but was a trench constructed by the City. *Compare* Pltfs.' Opp'n at 24 *with* Defs.' Reply at 12. Thus, the natural drainway exception to the common enemy doctrine does not apply here.

Harbor Lands also attempts to invoke the exception for failure to exercise due care in preventing unnecessary damage. *See Rothweiler*, 108 Wn. App. at 104-05 (2003). Under this exception, a municipality is not liable for judgment errors in adopting an inadequate drainage system, but is "liable for maintaining the original efficiency of the

ORDER – 13

system once it had adopted an efficient plan and constructed an adequate drain." *Id.* at 105. Without any further elaboration, Harbor Lands contends that "[t]here are issues of material fact as to the City's care" of its drainage system. Pltfs.' Opp'n at 24. Without any specific evidence showing that the City either failed to take steps to maintain the drainage system or improperly performed maintenance activities regarding the drainage system, the court has no basis to conclude that the due care exception to the common enemy doctrine applies here. *See Rothweiler*, 108 Wn. App. at 106 (holding that, in the absence of evidence indicating how a defendant failed to exercise due care, the plaintiffs have failed to demonstrate a genuine issue of material fact based on improper maintenance). Therefore, because Harbor Lands has not shown that any of the exceptions to the common enemy doctrine apply here, the claims related the water damage must be dismissed.

### F. The Court Grants Summary Judgment to the City on Harbor Lands' Tortious Interference Claim.

A claim for tortious interference with a business expectancy has five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the interference was for an improper purpose or used improper means; and (5) resultant damage. *See Hudson v. City of Wenatchee*, 94 Wn. App. 990, 998 (1999). A plaintiff is not required to show that a specific contract existed; it is sufficient if the evidence shows that the alleged interferor knew or should have known of the business opportunity or expectancy. *See Caruso v. Local No. 690 of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Amer.*, 33 Wn. App. 201, 207 (1982), *reversed on other grounds by Caruso*, 100 Wn.2d 343 (1983). Damages may be calculated based on "'a background of business experience on the basis of which it is possible to estimate with some fair amount of

ORDER – 14

success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered.'" *Caruso*, 33 Wn. App. at 208 (quoting *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2, 14 (3d Cir. 1963)).

Harbor Lands contends that the sum of the City's actions regarding the Property constitutes tortious interference with Harbor Lands' business expectancy in the sale of condominium units to prospective purchasers. Without any elaboration or analysis of the facts in this case, Harbor Lands asserts that "A city's arbitrary and capricious actions can be considered evidence of tortious interference with a business expectancy." While this may be true, this allegation does not address any of the elements of a tortious interference claim and whether there is evidence to support those elements in this case. For example, Harbor Lands has not shown that it had an expectancy in the sale of condominium units by a certain date, or that the City acted with improper motive or means to interfere in that expectancy. Without a showing of any evidence to support the elements of tortious interference, Harbor Lands has failed to establish that a genuine issue of material fact regarding this claim.

**G.    The Court Grants Summary Judgment to the City on Harbor Lands' Negligence Claim.**

Harbor Lands contends that the City breached its duty of care to provide accurate responses to a permit applicant's inquiries. Negligence claims based on a defendant's breach of a duty owed to the public are not permitted:

> The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. This basic principle of law is expressed in the "public duty doctrine."

ORDER – 15

*Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784-85 (2001). There is an exception to the public duty doctrine for special relationships, which applies if:

> (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give[] rise to justifiable reliance on the part of the plaintiff.

*Taylor v. Stevens County*, 111 Wn.2d 159, 166 (1988). An "express assurance" occurs where an individual makes a direct inquiry and the public official responds with incorrect information, the public official intends that the individual rely on the information, and the individual does rely on it to his or her detriment. *See Donohue v. State*, 135 Wn. App. 824, 835 (2006).

The parties do not dispute that the public duty doctrine would relieve the City of liability to individual permit applicants unless an exception applies. In this case, Harbor Lands asserts that the City made an express assurance to Harbor Lands by issuing a full building permit on June 13, 2005. According to Harbor Lands, it relied on the building permit as an express assurance under the Blaine Municipal Code that it was vested in the preliminary site plan a result of that building permit:

> Upon approval of the preliminary site plan, the applicant shall be vested as to the general layout, including building location, size and shape of open space, pedestrian and traffic circulation patterns, design and construction standards for streets and utilities. However, the applicant shall not be vested as to building construction and permits required under Chapters 15.04 and 15.08 BMC.

BMC 17.07.070(B). Harbor Lands contends that the City's actions, beginning with the alteration of the legal description in the deed and culminating in the issued the stop work order, contradict the express assurance given by virtue of granting the building permit.

Harbor Lands has overstated the final nature of the building permit it received, however. A building permit does not assure an applicant that the City will make no

ORDER – 16

further inquiries or that the City will not require additional plans, particularly if the applicant amends the site plan. *See*, *e.g.*, BMC 17.07.030(B) (allowing the City to demand additional information or material); BMC 107.07.060 (providing for site-plan amendment). Though Harbor Lands' permit allowed it to begin construction, it did not guarantee that no other submissions would be required or that all amendments would be approved. Furthermore, correspondence between Douglas and the City regarding site plan requirements demonstrates that both parties understood that the City continued to conduct site plan and compliance review even after the building permit was issued. *See* Galvin Decl., Exs. 4 (July 21, 2005 letter from Galvin to Douglas requesting a site plan with landscape details), 5 (July 26, 2005 letter from Douglas to the City stating that he could not yet complete a final site plan), 6 (August 10, 2005 letter from Galvin to Douglas requesting a copy of the site plan, including a surveyed map and a storm water site plan), 7 (September 8, 2005 letter from the City requesting a survey), 8 (September 30, 2005 letter from the City stating that Douglas must obtain approval of a site plan before any other site-related work could continue), 9 (October 3, 2005 letter from the City reiterating that Douglas has failed to submit a storm water site plan as required), 10 (October 12, 2005 letter from the City identifying which site plan submissions were inadequate).

Because Harbor Lands has not shown that the City's actions contradicted any of the express assurances made via issuance of a building permit, the City is entitled to summary judgment on Harbor Lands' negligence claim.

**H.     The Court Grants Summary Judgment Against Harbor Lands' Defamation Claim.**

Harbor Lands raises a defamation claim based on statements about Douglas made in Galvin's November 12 e-mail. A plaintiff must prove the four elements of a defamation claim: (1) a false statement of fact, (2) an unprivileged communication, (3)

ORDER – 17

fault, and (4) damages. *See Moe v. Wise*, 97 Wn. App. 950, 957 (1999). Whether the plaintiff is a private individual or public official determines the type of fault that must be proved and the corresponding burden of proof. If a plaintiff is a private individual, he or she must establish by a preponderance of the evidence that the defendant negligently published the defamatory statement.

In this case, three of the defamation elements are at issue. As to the first element, the City contends that Galvin's e-mail contained statements of opinion, not fact. Even if the e-mail did include false statements of fact, the City contends that it was a privileged communication because it was written in the course of Galvin's employment. Lastly, the City contends that Harbor Lands has not submitted any evidence of damages resulting specifically from the alleged defamation.

Regarding the first element, Harbor Lands agrees that defamatory statements must be statements of fact, not opinion, and that it is a question of law for the court to determine whether a statement is one of fact or opinion. *See* Pltfs.' Opp'n at 25-26. But Harbor Lands does not go on to specify which statements in the Galvin e-mail are false statements of fact; Harbor Lands' Opposition does not quote from the e-mail at all. The court's review of the Galvin e-mail supports Galvin's assertion that the e-mail contains Gavin's opinions about various factual circumstances. Furthermore, to the extent that any of Galvin's statements could be construed as fact statements, Harbor Lands has not offered any reason to conclude that the statements are false.

Because Harbor Lands has failed to submit evidence as to the first element of its defamation claim, the court need not address the other elements at issue. This claim must be dismissed.[6]

---

[6] In its opening brief, the City contends that Harbor Lands conceded in interrogatory responses that no facts support the outrage claim it raised in its complaint. Harbor Lands does not dispute this representation or otherwise address the outrage claim in its opposition brief. Thus, the court concludes that the outrage claim should be dismissed.

ORDER – 18

# I. The Court Grants Summary Judgment Against Harbor Lands' RCW 64.40.020 Claim Because It Is Untimely.

Harbor Lands has raised a claim against the City for violation of RCW 64.40.020, which provides in part:

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

An action for violation of this provision must be brought "within thirty days after all administrative remedies have been exhausted." RCW 64.40.030. A precondition to a valid RCW 64.40.020 claim is that the relief granted by the administrative remedy is inadequate. *See Brower v. Pierce County*, 96 Wn. App. 559, 563-64 (1999).

Harbor Lands has made no showing that its administrative remedy is inadequate. Harbor Lands eventually obtained the reversal of the stop work order, and Harbor Lands completed construction of the building and received occupancy permits. By the time Harbor Lands had exhausted its administrative remedies, it had obtained the relief it sought. And to the extent that Harbor Lands now seeks damages caused by the construction delay, RCW 64.40.020 does not support a claim for damages if an applicant ultimately prevails on administrative appeal, which Harbor Lands did. *See Brower*, 96 Wn. App. at 566. Therefore, Harbor Lands does not have a cause of action under RCW 42.60.020. The claim must be dismissed.

ORDER – 19

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 36). All of Plaintiffs' claims are dismissed, with the exception of the takings claims that are REMANDED to Whatcom County Superior Court.

DATED this 5TH day of December, 2008.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 20